COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judges Coleman and Bray
Argued at Norfolk, Virginia


CARRIE S. BARNHILL
                                      MEMORANDUM OPINION[*] BY
v.    Record No. 1437-95-1       CHIEF JUDGE NORMAN K. MOON
                                         JUNE 25, 1996
CITY OF VIRGINIA BEACH, ex rel., ETC.


          FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                  Kenneth N. Whitehurst, Jr., Judge

          Gregory Robert Wright for appellant.

          Teresa N. Hammons, Assistant City Attorney
          (Leslie L. Lilley, City Attorney, on brief),
          for appellee.



     Carrie S. Barnhill appeals from the trial court's order
terminating her parental rights with respect to her four
children.  Mrs. Barnhill contends that the trial court erred in
terminating her rights because the Virginia Beach Department of
Social Services did not properly document that termination was in
the best interests of the children prior to filing petitions for
termination, and further erred in finding by clear and convincing
evidence that the conditions which resulted in abuse of the
children could not be substantially corrected within a reasonable
time.  We affirm the judgment of the trial court.

     Mrs. Barnhill has four children, Jeremia Fritcher and
Samantha, Christopher, and Lorissa Barnhill.  At the time of
trial, Jeremia was twelve years of age, Christopher was eight,

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

Samantha was seven, and Lorissa was four. Randy Barnhill is the biological father of the three youngest children.

The Department of Social Services first became involved with the Barnhills in 1988, when it received information that the children were found in the family car without parental supervision. The social worker who investigated the case interviewed Jeremia, then age six, and determined that he had been left alone to supervise his younger siblings on other occasions. In November of 1988, the department established a "founded case" of physical neglect due to lack of supervision, and provided supportive counseling and other services to Mrs. Barnhill. Mrs. Barnhill agreed that she would not leave the children alone again.

In 1993, the Department of Social Services again contacted the Barnhills. As a result of that contact, the department filed petitions for emergency removal of the children on August 5, 1993. The circumstances leading to the petitions included unsanitary and unsafe conditions in the home, Mrs. Barnhill's failure to seek medical attention for Samantha's broken arm until fifteen hours after the injury occurred, Mrs. Barnhill cursing and screaming at the children, Mrs. Barnhill slapping Jeremia in the face, and Mrs. Barnhill leaving the children on two occasions with an acquaintance who had been convicted of sexual battery of a child. The court granted the petitions for emergency removal, and the children were removed by a department social worker,

Sally Carroll, on August 4, 1993. Ms. Carroll acknowledged that at the time she removed the children, the house was very clean. However, during that same visit Mrs. Barnhill refused to agree not to leave the children in the care of the individual convicted of sexual battery. This was the primary reason for removal of the children. Mrs. Barnhill has also denied abusing or neglecting the children either emotionally or physically.

After the children were removed from the home, the trial court entered a "supplemental order" requiring the Barnhills to make certain efforts to resolve the problems in their family, and enjoining them from leaving the children in the care of anyone convicted of assault or child abuse. Mrs. Barnhill contends that she undertook the affirmative steps required by this order, and she agreed that she would not leave her children in the care of the aforementioned individual. The initial foster care plans for the children established the goal of returning the children to their parents, and set a target date of February 1994.

The children were not returned by the target date, for two reasons. First, the department social workers believed that Mrs. Barnhill had not "taken responsibility" for the conditions that led to removal of the children. Second, beginning in December 1993 and continuing through March 1994, the three oldest children told their foster parents and counselors about sexual abuse by both Mr. and Mrs. Barnhill. In December 1994, the Barnhills were acquitted of criminal charges of sexual abuse against Christopher

and Samantha Barnhill.

The court suspended the Barnhills' supervised visitation with the children on March 16, 1994. On July 19, 1994, the department filed new foster care plans, subsequently approved by the court, that documented termination of parental rights as being in the best interests of the children. On December 22, 1994, the department filed a petition to terminate the Barnhills' parental rights over Christopher, Samantha, and Lorissa. On December 28, the department filed a similar petition for Jeremia. After trial on January 19, 1995, the juvenile and domestic relations court granted the petitions. Both parents appealed to circuit court, and Randy Barnhill then elected not to pursue his appeal. After trial on March 30 and 31, 1995, the circuit court terminated Mrs. Barnhill's parental rights pursuant to Code § 16.1-283(B).

At trial, Jeremia testified that he had seen his mother naked in the house on more than one occasion, and that the children would sleep in the bed with their mother when Mr. Barnhill was at sea with the Navy. He also stated that his mother sometimes had him pop pimples on her back, butt and thighs.

At the time of trial, Jeremia was living at the Boys' Home in Covington. Jeremia's therapist at the Boys' Home testified that since the January hearing where parental rights were terminated, Jeremia's behavior and school performance had

improved. The therapist attributed these changes to Jeremia's increased sense of safety and security once he felt he would "no longer have to deal with the court issue, [and] not have to deal with the issue of Mom . . . ."

Christopher's foster mother, therapist and a department social worker testified pursuant to Code § 63.1-248.13:2 concerning Christopher's allegations of sexual abuse. According to these witnesses, Christopher stated that on more than one occasion, Mr. and Mrs. Barnhill and the children participated in group sexual activity. The children had to watch their parents "make love," the parents would put their mouths on the children's penis or vagina, and the children were forced to place their mouths on their parents' genital areas. He said that his father put his penis in his butt and tried to do the same to Samantha.

Christopher also described an incident of group sexual activity at the home of a male babysitter. Christopher testified that during this incident, his parents and siblings, with the exception of Lorissa, had sexual contact with each other and also with a rabbit and a dog. Christopher said that he had to lick the "private area" of both of these animals. He also described an incident in which his parents disemboweled a pet rabbit to demonstrate what would happen to the children "if they told anything that happened."

Christopher's therapist testified that Christopher's behavior had regressed following visits with his mother. She

described Christopher as a traumatized child who disliked and mistrusted his mother, and who would not feel safe and secure until he knew that he would not have to live with her again.

A department social worker, her foster mother, and her therapist testified concerning Samantha's recollections. The foster mother and therapist reported Samantha's account of Mrs. Barnhill rubbing her on her "potty," near her vaginal area, with a hairbrush. The social worker testified that Samantha drew a picture of herself and her mother, with an "X" marking the spot on or near her vaginal area where her mother touched her. The therapist described Samantha as a guarded and emotionally immature child who has difficulty controlling her bowels and bladder. The latter problem became more pronounced following family therapy sessions with Samantha's parents. Samantha told the therapist that she did not want to be alone with her parents because she did not feel safe.

Lorissa Barnhill was only two years old when she was removed from the Barnhill home. There is no evidence that she was sexually abused, although Christopher stated that she was present during the sessions of group sex.

Mrs. Barnhill testified in her own behalf. She categorically denied any physical or sexual abuse of the children. She testified concerning her efforts to comply with all of the court-ordered conditions on her behavior, including use of appropriate caretakers for the children, obtaining

counseling, and maintaining her home in safe and sanitary condition. She reported that she was separated from her husband, producing a copy of a separation agreement to verify this claim, and testified that she would not allow Mr. Barnhill to see the children if they were returned to her. She presented evidence from neighbors, as well as from a family that stayed with the Barnhills during the summer of 1992, that they saw no evidence of abuse in the Barnhill household. She described her successful completion of training as a shipfitter, and her current employment in that occupation at a local shipyard. She testified that she loved her children and would not do anything to hurt them if they were returned to her.

On review of the trial court's termination of parental rights, the evidence is viewed in the light most favorable to the prevailing party below, and the trial court is presumed to have weighed all of the evidence, considered the statutory requirements, and made its determination based on the child's best interests. Logan v. Fairfax County Department of Human Development, 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (citations omitted). Where, as here, evidence is heard ore tenus, the trial court's findings will not be disturbed on appeal unless they are plainly wrong or without evidence to support them. Lowe v. Department of Public Welfare, 231 Va. 277, 282, 343 S.E.2d 70, 73 (1986).

FAILURE TO DOCUMENT REASONS FOR DECISION
TO SEEK TERMINATION OF PARENTAL RIGHTS

Code § 16.1-283, which governs termination of parental rights, "is designed to balance the needs of the child against the rights of the parents and their common interest in preserving the family relationships." Kaywood v. Halifax County Department of Social Services, 10 Va. App. 535, 539, 394 S.E.2d 492, 494, (1990) (quoting Edwards v. County of Arlington, 5 Va. App. 294, 306, 361 S.E.2d 644, 650 (1987)). Even within this statutory scheme, the best interest of the child is the paramount concern. Lecky v. Reed, 20 Va. App. 306, 311, 456 S.E.2d 538, 540 (1995) (citations omitted).

Under Code § 16.1-283, the court cannot accept a petition to terminate parental rights "prior to the filing of a foster care plan, pursuant to § 16.1-281, which documents termination of residual parental rights as being in the best interests of the child." Code § 16.1-283(A). Under Code § 16.1-281(B), if the child welfare agency determines that it is not reasonably likely that the child can be returned to his prior family within a practicable time, the agency must "include [in the foster care plan] a full description of the reasons for this conclusion . . . ."

Mrs. Barnhill argues that the department failed to document the reasons for its decision to request termination of parental rights pursuant to the statute, and that this failure constitutes a denial of due process. She contends that she had corrected the problems documented in the foster care plans, and

that her rights were terminated for a reason not documented in the plans--namely, the allegations of sexual abuse. However, review of the most recent foster care plans for all four children reveal that sexual abuse, as well as the Barnhills' refusal to acknowledge the abuse, is thoroughly documented as a primary reason for the department's decision to seek termination of rights. The trial court therefore did not err in accepting the petition for termination of rights under Code § 16.1-283(A).

## INSUFFICIENCY OF EVIDENCE THAT PROBLEMS LEADING TO ABUSE COULD NOT BE CORRECTED

Mrs. Barnhill's parental rights were terminated pursuant to Code § 16.1-283(B). Under that statute, the court may terminate the residual rights of a parent of a child who has been neglected or abused and placed in foster care based upon clear and convincing evidence that such action is in the child's best interest, and that (1) "[t]he neglect or abuse suffered by [the] child presented a serious and substantial threat to his life, health or development," and that (2) "[i]t is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time." Code § 16.1-283(B)(1)-(2); see Logan, 13 Va. App. at 128-29, 409 S.E.2d at 463.

Mrs. Barnhill challenges only the trial court's finding that the conditions resulting in abuse and neglect could not be corrected within a reasonable time. In support of her challenge,

she points to her efforts to meet the requirements imposed by the court when her children were removed from her home, including her agreement that the individual convicted of sexual battery would no longer care for her children. She also points to her successful efforts to pursue a career as a shipfitter. Mrs. Barnhill argues that because her evidence was unrefuted by the department, the court erred in finding that the conditions that resulted in the abuse or neglect could not be substantially corrected within a reasonable time.

The department does not dispute that Mrs. Barnhill took the corrective action described above, although it maintains that Mrs. Barnhill has never accepted responsibility for the incidents of abuse and neglect that led to the emergency removal of her children. Of greater significance, however, is the problem of sexual abuse. The record is clear that the department sought termination primarily due to the sexual abuse described by the children. Viewing the record in the light most favorable to the department, the department demonstrated by clear and convincing evidence that the three oldest children were sexually abused and were significantly traumatized by that abuse. Their behavior regressed even after supervised visits with their parents. While there was no evidence that Lorissa, the youngest child, was abused, she was exposed to the abuse of the other children, and the trial court could reasonably conclude that only permanent removal from the home would save her from experiencing the abuse

directly.

Mrs. Barnhill has done nothing to correct the problem of sexual abuse. She testified that she would not abuse the children or allow anyone else to abuse them, but she has never acknowledged that any abuse took place or that she was involved in any abuse. Mrs. Barnhill has been in counseling, but she testified that the focus of the counseling was depression, not sexual abuse. According to one of the department's expert witnesses, it takes a minimum of eighteen months for sexual perpetrators to be rehabilitated so that they can provide a safe environment for children. But, Mrs. Barnhill has not started the process of rehabilitation because she has not acknowledged the abuse. In such circumstances, the trial court did not err in finding by clear and convincing evidence that the conditions resulting in abuse and neglect of the children could not be substantially corrected within a reasonable time. For these reasons, we affirm the judgment of the circuit court.

Affirmed.