COURT OF APPEALS OF VIRGINIA

Present:  Judges Baker, Willis and Bray
Argued at Norfolk, Virginia

TIMOTHY LECKY and LAVETTA LECKY

v.          Record No. 0646-94-1          OPINION BY
                                          JUDGE RICHARD S. BRAY
MICHELE REED                              MAY 2, 1995

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Frederick B. Lowe, Judge

James Amery Thurman (Thurman & Thurman, on briefs), for
appellants.

Doris L. Edmonds for appellee.


Acting on petition of Timothy and Lavetta Lecky (petitioners),
the Virginia Beach Juvenile and Domestic Relations District Court
(J&D Court) terminated the residual parental rights of Michele Reed
(mother) in her son, Jordan R. Reid, pursuant to Code
§ 16.1-283(C).  Mother appealed to the trial court and, following a
hearing ore tenus, the court denied the petition concluding that,
although the substantive evidence supported termination, the
mother's age constituted "good cause" for her failure to remedy
timely those conditions which originally "led to the child's foster
care placement."  See Code § 16.1-283(C)(2).

Petitioners appeal, complaining that the trial court
erroneously denied relief clearly appropriate to the circumstances
in accordance with Code § 16.1-283(C)(2).  Assigning cross-error,
mother asserts procedural irregularities as a bar to petitioners'
"standing" to pursue termination.  She also challenges the
constitutionality of Code § 16.1-283(C)(2) and the sufficiency of
the evidence to establish that termination was in Jordan's best

interests.  We agree that the evidence supported termination, but find that mother's failure to remedy the conditions which prompted foster care in accordance with Code § 16.1-283(C)(2) was without the requisite "good cause" and, therefore, reverse the order.

The facts are uncontroverted.  Jordan was born April 30, 1991, of an unknown father.  Mother was then fourteen years of age and in the custody of Patrick and Denise Creary, having been voluntarily placed with them by her estranged mother.[1]  Mother and Jordan remained in the Creary home until the custody of mother was transferred to the Virginia Beach Department of Social Services (DSS) in mid-July, 1991, in response to a petition of Mr. and Mrs. Creary for "relief."  Jordan thereafter remained briefly with Mr. and Mrs. Creary, and was reunited with mother on August 12, 1991, through a DSS placement in a "therapeutic foster home."  However, mother "ran away" shortly thereafter, and Jordan was transferred to "regular" foster care with petitioners where he has remained since September 4, 1991.

DSS subsequently developed a "foster care plan," which was submitted to and approved by the J&D Court, to place mother in a "residential group" setting and Jordan with relatives or "other appropriate" persons, subject to visitation with mother.  The plan was intended to provide for Jordan's physical needs in a "nurturing and stimulating environment," while "stabiliz[ing] [mother] psychologically and emotionally" with a "treatment plan . . . to

---

[1]Mother's father had previously committed suicide.

enable her to parent" Jordan "in the future."  These "treatment goals" were disrupted, however, by mother's persistent "runaway behavior" throughout the remainder of 1991 and into early 1992.  As a result, petitioners moved the J&D Court for custody of Jordan, and DSS petitioned to terminate the parental rights of both mother and the unknown father.  The DSS petition was accompanied by a second foster care plan, dated June 26, 1992, which documented termination as "being in the best interests of the child."  Code § 16.1-283(A).

Several "home studies," psychological and like assessments of the parties involved were undertaken incidental to these petitions.  The record discloses that mother "tested . . . borderline mental retarded" and evidenced a "high risk for abuse/neglect" of Jordan.  She displayed "parenting practices of corporal punishment, . . . rejection of [Jordan] for failure to comply with an order and appeasing [him] by allowing an inappropriate activity."  Mother and Jordan were "emotionally distanced," and she "lack[ed] empathy."  Jordan's "interaction" with mother "was . . . evocative of one between a babysitter and a child."  Observations of Jordan following visitation with mother "revealed a high level of demandingness, disorganized, . . . difficult" and "anxious behaviors."

Evaluations of Jordan characterized a "cheerful," "alert," "curious," "attentive" child of "average" intelligence, without noted physical disability.  He exhibited significant "attachment," a "parent-child interaction," with his foster mother, petitioner

Mrs. Lecky.  Petitioners have provided Jordan with a "stable environment" of "rules and expectations[,] . . . stated and enforced with . . . loving [and] understanding," essential to his development into a "secure, productive, law abiding citizen." Jordan "responds positively" to the "appropriate parenting attitudes, and . . . sensitive . . . style" of Mrs. Lecky. Separation from petitioners would be disruptive and "harmful" to Jordan, and mother's ability to provide his resulting need for emotional support was termed "questionable."

A hearing before the J&D Court on the consolidated petitions was originally scheduled for August 14, 1992, but postponed until December 3, 1992, on motion of DSS because mother had demonstrated "progress toward having Jordan returned to her custody."  This improvement in "parenting skills" continued until the December hearing, and the J&D Court then granted custody of Jordan to petitioners, but denied the DSS termination petition.[2]  However, mother's "runaway" and attendant irresponsible behavior reoccurred shortly thereafter, prompting the instant petition on June 25, 1993, and related November 3, 1993 order of the J&D Court to terminate her parental rights.  Although evidence at the January 6, 1994 hearing on appeal to the trial court indicated that mother was again "doing well" in a "group home," this followed yet another "runaway" episode the preceding month.

At the conclusion of the ore tenus hearing on appeal to the

---

[2]The petition was granted, however, with respect to the unknown father.

trial court, the court concluded that "termination [was] in the best interests of the child . . . and that [mother] has been unwilling and unable to remedy substantially the conditions which led to the foster care placement of the child . . . notwithstanding the reasonable and appropriate efforts of the [DSS] to such end." The court recognized that, absent "good cause," Code § 16.1-283(C)(2) required a parent to resolve such "conditions" within a "reasonable period not to exceed twelve months." Id. However, finding that "the statute, . . . does not contemplate a sixteen-year-old parent and that . . . 'a reasonable period of time' is different for a minor than for an adult," the court determined that the "age of the mother" constituted "good cause" for her failure to satisfy the "'reasonable time' standard" of Code § 16.1-283(C)(2) and denied termination. See generally id.

Code § 16.1-283 embodies "[t]he statutory scheme for the . . . termination of residual parental rights in this Commonwealth." Rader v. Montgomery County Dep't of Social Servs., 5 Va. App. 523, 526, 365 S.E.2d 234, 235 (1988). This "scheme provides detailed procedures designed to protect the rights of the parents and their child," id. at 526, 365 S.E.2d at 236-36, balancing their interests while seeking to preserve the family. Kaywood v. Halifax County Dep't of Social Servs., 10 Va. App. 535, 539, 394 S.E.2d 492, 494 (1990). However, we have consistently held that "[t]he child's best interest is the paramount concern." Wright v. Alexandria Div. of Social Servs., 16 Va. App. 821, 827, 433 S.E.2d 500, 503 (1993), cert. denied, 115 S. Ct. 651 (1994).

Code § 16.1-283(C)(2) provides, in pertinent part, that [t]he residual parental rights of a parent or parents of a child placed in foster care as a result of court commitment . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that . . . [t]he parent or parents, without good cause, have been unwilling or unable <u>within a reasonable period not to exceed twelve months</u> to remedy substantially the conditions which led to the child's foster care placement, notwithstanding the reasonable and appropriate efforts of . . . rehabilitative agencies to such end.

(Emphasis added). The statute identifies circumstances which "shall constitute prima facie evidence of the conditions" requisite to termination, including failure by the parent or parents, "without good cause, . . . to make reasonable progress towards the elimination of the conditions which led to the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court." Code § 16.1-283(C)(3); <u>see</u> <u>Logan v. Fairfax County Dep't of Human Dev.</u>, 13 Va. App. 123, 130, 409 S.E.2d 460, 464 (1991).

The statute clearly contemplates that efforts to resolve the "conditions" relevant to termination are constrained by time. Code § 16.1-283(C)(2). Absent "good cause," a parent or parents receiving the "reasonable and appropriate" services of "rehabilitative agencies" must "remedy substantially" the "conditions which led to . . . foster care" of the child in a "reasonable period not to exceed twelve months." <u>Id.</u> This provision protects the family unit and attendant rights of both parents and child, while assuring resolution of the parent/child relationship without interminable delay. "It is clearly not in the

best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming . . . responsibilities."  Kaywood, 10 Va. App. at 540, 394 S.E.2d at 495.

Here, the record clearly supports the trial court's determination that (1) termination was in Jordan's best interests, and (2) that mother had been either unwilling or unable to remedy those conditions which led to Jordan's placement in foster care within twelve months, notwithstanding the significant efforts of DSS.  Accordingly, these requirements of Code § 16.1-283(C) indispensable to termination of a mother's parental rights were satisfied.  Nevertheless, the court declined to terminate because mother's "age" provided "good cause" or excuse for her unwillingness or inability to cure timely the circumstances which gave rise to foster care.

While age of the parent or parents is doubtless an appropriate consideration in assessing "good cause" in the context of Code § 16.1-283(C), it is not a circumstance which prevails over the best interests of the child.  Nothing in this record attributes mother's parental deficiencies to her age or suggests that the mere passage of time would resolve her difficulties.  Thus, further delay would prolong Jordan's familial instability without the promise of benefit to him, a result clearly contrary to the child's best interests.  Under such circumstances, mother's age does not alone constitute good cause to excuse her failure to resolve the conditions which prompted Jordan's foster care in accordance with

statute.

We turn next to mother's assignments of cross-error and first address her challenge to the sufficiency of the evidence to prove that termination serves Jordan's best interests. The evidence was overwhelming that mother pursued an unstable and irresponsible lifestyle, incompatible with Jordan's needs and reflective of an indifference to his interests. This conduct spanned the child's entire life, despite the best efforts and substantial resources of DSS to assist and redirect mother in her behavior and parenting skills. Guided by Jordan's best interest, the record therefore provided the requisite "clear and convincing evidence" that termination of mother's residual parental rights in Jordan was the appropriate statutory remedy. Code § 16.1-283(C).

Deficiencies in the record preclude our consideration of mother's remaining arguments. Mother objected to the order of the trial court only "on the issue of finding that termination is in the best interests of Jordan Reid." "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor <u>at the time of the ruling</u>, except for good cause shown or to enable the Court . . . to attain the ends of justice." Rule 5A:18 (emphasis added). Further, we will not review an issue first argued on appeal. <u>Jacques v. Commonwealth</u>, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991) (citations omitted). A contrary rule would "'deny the trial court the opportunity to consider and weigh, and, if necessary, reconsider before finally ruling.'" <u>Mounce v. Commonwealth</u>, 4 Va.

App. 433, 435, 357 S.E.2d 742, 744 (1987) (quoting <u>Floyd v.</u> <u>Commonwealth</u>, 219 Va. 575, 584, 249 S.E.2d 171, 176 (1978)).

During oral argument, mother urged that we apply the "ends of justice" exception to the procedurally defaulted arguments. <u>See</u> Rule 5A:18; <u>see also</u> <u>Mounce</u>, 4 Va. App. at 436, 357 S.E.2d at 744. However, "to avail [herself] of the rule [she] had to affirmatively show . . . that the error [was] clear, substantial and material," constituting a "miscarriage of justice," an "obvious injustice." <u>Brown v. Commonwealth</u>, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989). Such circumstances are not demonstrated by this record. Accordingly, we reverse the judgment of the trial court and order the residual parental rights of mother terminated in accordance with Code § 16.1-283(C).

<u>Reversed and final judgment.</u>