COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Annunziata and Overton


RUTH L. GENTRY

                                            MEMORANDUM OPINION*
v.   Record No. 1340-97-3                       PER CURIAM
                                             MARCH 17, 1998
HARRISONBURG-ROCKINGHAM
 SOCIAL SERVICES DISTRICT AND
 AMBER MARIE PRESGRAVES, AN INFANT


               FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
                     John J. McGrath, Jr., Judge

               (Thomas A. Howell, on briefs), for appellant.

               (L. Quinn Kaylor; Christel L. Lewis, Guardian
               ad litem; Lewis, Ruple, Hart & Temeles, on
               brief), for appellees.


     Ruth L. Gentry appeals the decision of the circuit court

terminating her residual parental rights to her younger daughter.

 Gentry contends that the trial court erred when it found that

the Harrisonburg-Rockingham Social Services District (Social

Services) presented clear and convincing evidence sufficient

under Code § 16.1-283(B) and (C) to terminate her parental

rights.  Upon reviewing the record and briefs of the parties, we

conclude that this appeal is without merit.  Accordingly, we

summarily affirm the decision of the trial court.  See Rule

5A:27.

     "Code § 16.1-283 embodies 'the statutory scheme for the

. . . termination of residual parental rights in this

     *Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

Commonwealth.'" Lecky v. Reed, 20 Va. App. 306, 311, 456 S.E.2d 538, 540 (1995) (citation omitted). "This 'scheme provides detailed procedures designed to protect the rights of the parents and their child,' balancing their interests while seeking to preserve the family. However, we have consistently held that 'the child's best interest is the paramount concern.'" Id. (citations omitted).

> "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." The trial court's judgment, "when based on evidence heard ore tenus, will not be disturbed on appeal unless plainly wrong or without evidence to support it."

Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (citations omitted).

The child was removed from Gentry's custody on December 22, 1994, following allegations that Bruce W. Presgraves, the child's father, had physically abused the child. Presgraves was living with Gentry, the child, and Gentry's older daughter. By order entered April 20, 1995, Presgraves pleaded guilty to felony child abuse. His sentence was suspended with the condition, among others, that he not threaten, harm, or harass Gentry or the children for six months. Gentry regained physical custody of the child in August 1995. Pursuant to the agreement Gentry signed at that time, she agreed to continue counseling; cooperate with the in-home services provided; not allow any contact between the child and Presgraves; maintain a stable home; and keep Social

2

Services informed of changes in her address or financial circumstances.  In August 1995, however, after an eight-month absence, Presgraves began staying overnight with Gentry.  Gentry testified at trial that she signed the agreement knowing that she was hiding the fact of her renewed relationship with Presgraves from Social Services.

In February 1996, the juvenile and domestic relations district court granted Presgraves' petition for visitation with the child, and two supervised visitations were held.  In the February service plan, Social Services noted that Gentry was cooperating and that the child had adjusted to living with Gentry.  However, on February 29, 1996, Social Services discovered Gentry and Presgraves arriving together with the child for Presgraves' visitation.  Social Services stopped Presgraves' visitations, and, several days later, placed the child in foster care.  In April 1996, Social Services began termination proceedings in district court.  Gentry appealed the district court's termination order to the circuit court.  Following two days of testimony, the circuit court entered an order terminating the parental rights of Presgraves and Gentry.  Gentry appealed.

Code § 16.1-283(B)

The trial court found that clear and convincing evidence established that it was in the best interests of the child to terminate Gentry's parental rights because the neglect and abuse suffered by the child presented a serious and substantial threat

to her life, health or development. See Code § 16.1-283(B)(1). The trial court further found that it was "not reasonably likely that the conditions which resulted in the neglect or abuse [could] be substantially corrected or eliminated" to allow the child's safe return to Gentry within a reasonable period of time. See Code § 16.1-283(B)(2). The trial court also found that Social Services presented prima facie evidence of the conditions set out in Code § 16.1-283(B)(2) by presenting proof that Gentry "without good cause, [has] not responded to or followed through with appropriate, available and reasonable rehabilitative efforts . . . designed to reduce, eliminate or prevent the neglect or abuse of the child." Code § 16.1-283(B)(2)(c).

Gentry contends that there was insufficient evidence that her daughter was neglected. However, the removal order noted that Gentry "does not object to emergency placement due to threats against her" by Presgraves. At trial, Gentry could not remember if she agreed to the placement. Her testimony demonstrated that Presgraves was threatening her because she had reported that he broke the child's collarbone. As noted by the trial court, Gentry voluntarily relinquished custody of her daughter in December 1994 after Presgraves broke the child's collarbone. Gentry admitted that Presgraves "harassed" her to withdraw her incriminating comments, but defended him by asserting that he never physically abused her when harassing her. The trial court found that the evidence was clear and convincing

4

that the child was neglected.  That finding was not plainly wrong.

Gentry also contends that there was insufficient evidence that she failed to respond to the rehabilitative efforts on the part of Social Services.  The trial court found, based upon the evidence and the testimony of the parties, social workers, and expert witnesses, that Gentry suffers from a mental or emotional deficiency in that she is drawn to relationships with abusive men.  Both her children were fathered by men who were demonstrably abusive.  Gentry admitted that Presgraves was abusive, but she was unable or unwilling to avoid those relationships.  Dr. Mario Dennis, a psychologist who evaluated Gentry, testified that it was likely that Gentry would continue to enter into abusive relationships in the future.

Gentry's service agreement with Social Services expressly prohibited contact with Presgraves.  While Gentry suggests that she did not realize the consequences of continuing her relationship with Presgraves, it is abundantly clear from the record that Gentry knew that Presgraves was not to have contact with her and her children.  Both Gentry and Presgraves admitted that he would hide in the woods behind her apartment if a caseworker or social worker arrived.

Despite receiving support through abuse counseling, in-home parenting services, and additional services, Gentry maintained her secretive relationship with Presgraves.  While Gentry

5

completed the steps required in the Social Services' plan, attended weekly support groups, and appeared to be cooperating, she was violating the plan and placing herself and her child at risk for continued abuse by residing with Presgraves.

The child was placed in foster care because Gentry was unable to keep her safe. While the evidence does not indicate that the child was physically harmed during the time Gentry and Presgraves were secretly reestablishing their relationship, the record demonstrates that Presgraves threatened and abused Gentry's older daughter. The trial court found that Gentry "was unable or unwilling to remove herself from the abusive relationship with [Presgraves] and actively sought to conceal her on-going relationship with [Presgraves] from the case workers." The trial court found that Social Services established by clear and convincing evidence that it was in the child's best interests to terminate Gentry's parental rights because Gentry had been unwilling or unable to stay out of a relationship which was demonstrably abusive to herself and her children. This finding was not plainly wrong.

### Code § 16.1-283(C)

The trial court found, by clear and convincing evidence, that it was in the best interests of the child to terminate Gentry's parental rights because Gentry had been unwilling or unable, without good cause and for a period exceeding twelve months, to remedy the conditions which led to the child's foster

6

care placement, notwithstanding the "reasonable and appropriate efforts" of Social Services. See Code § 16.1-283(C)(2). The trial court also found that Social Services presented prima facie evidence of the subsection (C)(2) conditions by proving that Gentry, without good cause, failed to make reasonable progress towards the elimination of the conditions which led to the child's foster care placement in accordance with a jointly-designed foster care plan. See Code § 16.1-283(C)(3)(b).

It is uncontested that Gentry received appropriate rehabilitative and support services through Social Services. Nevertheless, despite repeatedly stating her resolve to avoid Presgraves, repeatedly denying to Social Services and her counselors that she was continuing the relationship, and repeatedly being told of the consequences, Gentry resumed her relationship with Presgraves. From December 1994, when, according to her testimony, Gentry wanted to break up with Presgraves, until September 1996, Gentry continued to turn to Presgraves when the opportunity arose. Gentry's failure to end the relationship demonstrated that she was "unable to make reasonable progress towards the elimination of the conditions which led to the child's foster care placement."

Gentry contends that Social Services failed to adequately inform her that she faced the termination of her parental rights if she failed to satisfy the terms of her agreement with Social Services. That claim is without support. The record reflects

7

that Gentry was informed that she faced termination of her parental rights. Gentry's testimony established that she knew Social Services could "take" her children away if she failed to follow through on her responsibilities under the agreement.

Despite all the counseling, therapy, and support aimed at alerting Gentry to the seriousness of her situation and the risks faced by herself and her children, Gentry asserts that it took the actual termination order for her to realize the consequences of her action. Her child should not bear the burden of Gentry's unwillingness or inability to recognize the seriousness of the situation. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Social Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

### Use of Less Drastic Alternatives

Gentry contends that the trial court failed to consider less drastic alternatives to termination of her parental rights. See Code § 16.1-278.2 "Those remedies, which merely effect 'a transitory change in the child's custodial status . . . without affecting other parental rights,' are specifically 'designed for the case of a parent who shows extenuating circumstances and demonstrates [her] potential for rehabilitation as a fit parent.'" Edwards v. County of Arlington, 5 Va. App. 294, 312-14 S.E.2d 644, 654-55 (1987) (citation omitted).

8

The record demonstrates that Social Services explored placement with other relatives, but found such placement to be unavailable or unadvisable. The trial court's decision not to place the child with other relatives is fully supported by the evidence.

The trial court did not find convincing Gentry's stated intention to avoid abusive relationships in the future. Her past behavior did not demonstrate a strong potential for rehabilitation. We must rely on the inherent credibility determinations which underlie the trial court's decision, as it heard and saw the witnesses testify. The record demonstrates that the trial court considered less drastic alternatives, and we find no error in the trial court's decision to terminate Gentry's parental rights.

Accordingly, the decision of the circuit court is summarily affirmed.

Affirmed.