COURT OF APPEALS OF VIRGINIA

Present:  Judges Baker, Elder and Bumgardner

KAMAL DATT

MEMORANDUM OPINION[*]

v.          Record No. 2276-97-4          PER CURIAM
                                          APRIL 21, 1998

ALEXANDRIA DIVISION
 OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
            Donald M. Haddock, Judge

(Gwena Kay Tibbits, on briefs), for
appellant.

(Molly A. Smith, Assistant Commonwealth's
Attorney, on brief), for appellee.


     Kamal Datt (mother) appeals the decision of the circuit
court terminating her residual parental rights.  Mother contends
that the trial court erred by (1) finding that she, without good
cause, was unwilling or unable within a reasonable time to remedy
substantially the conditions which resulted in her children's
foster care placement; (2) finding that she was suffering from an
emotional illness and mental deficiency of such severity that
there is no reasonable expectation that she will be able to
undertake responsibility for the care of the children; (3)
finding that termination of her residual parental rights was in
the best interests of the children; and (4) not attempting to
place the children with a relative.  Upon reviewing the record

---

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

and briefs of the parties, we conclude that this appeal is without merit.  Accordingly, we summarily affirm the decision of the trial court.  See Rule 5A:27.

> "In matters of a child's welfare, trial
> courts are vested with broad discretion in
> making the decisions necessary to guard and
> to foster a child's best interests."  The
> trial court's judgment, "when based on
> evidence heard ore tenus, will not be
> disturbed on appeal unless plainly wrong or
> without evidence to support it."

Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (citations omitted).

The Alexandria Division of Social Services (DSS) was required to present clear and convincing evidence sufficient to satisfy the requirements of Code § 16.1-283.

> Code § 16.1-283 embodies "[t]he statutory
> scheme for the . . . termination of residual
> parental rights in this Commonwealth" [which]
> . . . "provides detailed procedures designed
> to protect the rights of the parents and
> their child," balancing their interests while
> seeking to preserve the family.  However, we
> have consistently held that "[t]he child's
> best interest is the paramount concern."

Lecky v. Reed, 20 Va. App. 306, 311, 456 S.E.2d 538, 540 (1995) (citations omitted).

### Substantially Remedying Underlying Conditions

Code § 16.1-283(C) provides, in pertinent part, that the court may terminate residual parental rights to a child placed in foster care as a result of court commitment, an entrustment agreement or other voluntary relinquishment, "if the court finds, based upon clear and convincing evidence, that it is in the best

2

interests of the child" and that the parent, without good cause, has been "unwilling or unable within a reasonable period not to exceed twelve months to remedy substantially the conditions which led to the child's foster care placement," despite "reasonable and appropriate efforts" from "social, medical, mental health or other rehabilitative agencies to such end."  Code § 16.1-283(C)(2).  Evidence that the parent failed, without good cause, "to make reasonable progress towards the elimination of the conditions which led to the child's foster care placement in accordance with . . . a [jointly designed and agreed upon] foster care plan" is prima facie evidence that the parent was unwilling or unable to substantially remedy the underlying conditions. Code § 16.1-283(C)(3)(b).

DSS presented evidence concerning mother's problems with housing, employment, and parenting issues which caused the neglect and abuse suffered by the children, and husband's ongoing alcohol addiction.  The evidence, including mother's testimony, indicated that mother failed to recognize, acknowledge, or accept any responsibility for her children's neglect, or see any need for improving her parenting or relational skills.  Moreover, although mother testified that she addressed the problem of father's alcoholism by separating from him, the evidence indicated that she continued to have an ongoing relationship with him.  Evidence of mother's psychological profile indicated that mother was resistant to criticism and had difficulty

3

incorporating suggested changes in behavior.

The record contains credible evidence to support the trial court's findings.  Therefore, we find no error.

Emotional Illness

Mother contends that the trial court erred in finding that clear and convincing evidence proved that she suffered from "an emotional illness and a mental deficiency of such severity that there is no reasonable expectation that she will be able to undertake responsibility for the care needed by the children in accordance with their ages and stages of development."

Dr. Gloria Morote, a clinical psychologist with the Multicultural Clinical Center, interviewed and tested mother in March 1997.  Dr. Morote testified that, based upon her interview and testing of mother, she concluded that mother did not lack intellectual ability, but that mother lacked the emotional ability to parent effectively.  Dr. Morote stated that mother was rigid, inflexible, socially immature, lacked self-awareness, and had poor interpersonal skills.  Mother was unable to benefit from feedback because she denied that her answers were wrong and refused to incorporate suggestions to improve her performance on tests.  In addition, mother denied any history of spousal abuse, denied that father had serious trouble with alcohol, and denied neglecting or abusing her children.

The trial court also saw and heard the mother testify.  Thus, the court was able to determine what weight to afford her

testimony in light of the other evidence presented.  In her testimony, mother minimized the problems faced by the family and her responsibility for the children's placement in foster care.

The record supports the trial court's finding that DSS established by clear and convincing evidence that mother suffered from an emotional illness and a mental deficiency and that there was no reasonable expectation that she would be able to be responsible for the care needed by her children.

<u>Best Interests of the Children</u>

The evidence established that the children faced neglect and abuse while in the custody of their parents.  DSS repeatedly identified hygiene, housing, supervision, parenting issues, school attendance, and domestic violence as problems within the family.  The oldest child, who has cerebral palsy, regularly came to school with unclean clothing and underwear, an unwashed face, and unbrushed teeth and hair.  He was unable to feed himself with a fork, and he indicated that he felt like a dog when his parents expected him to eat his food face down from his plate.  When questioned about this practice, mother's answers were evasive. The boy's wheelchair was encrusted with dead roaches.  Mother rejected the use of an appliance which would have allowed the son to toilet himself because it would require her to empty the toilet.

The younger children had better hygiene, but their attendance at school was poor, and they dressed in clothing that

5

was inappropriate for the weather. A DSS social worker testified that the parents continued to have problems with housing and domestic violence.

While in foster care, the children have thrived, physically and emotionally. Although they expressed desires to see their parents, the children consistently expressed concerns about being returned to mother's custody without their father being present. Visitations with mother were often marked by her indifference to the children, including one incident when mother had to be instructed to aid the youngest child, who was vomiting into a waste basket.

Credible evidence supports the trial court's finding that DSS proved by clear and convincing evidence that it was in the children's best interests to terminate mother's parental rights.

Placement with Relatives

Mother contends that the trial court erred by not attempting to place the children with her sisters. "Before termination of parental rights by the court, the agency seeking termination has an affirmative duty to investigate all reasonable options for placement with immediate relatives." Sauer v. Franklin County Dep't of Soc. Servs., 18 Va. App. 769, 771, 446 S.E.2d 640, 641 (1994); see also Code § 16.1-283(A).

The evidence indicated that DSS explored placement with the family even before the children were placed in foster care. The family did not respond or attempt to visit the children until

near the time of trial and did not cooperate in completing paperwork or by contacting DSS. Mother's younger sister, Shaleen Mishra, testified that she was interested in adopting all three children. However, Mishra admitted she was in the process of divorcing her third husband, that she had not seen the children in over three years, and that she had testified at the district court that she would adopt the two younger children only. Mother's older sister, Purnima Sidig, did not testify. However, there was evidence that Sidig was instructed to bring her husband to a meeting with DSS to discuss the possibility of adoption, but failed to do so. Sidig did not contact DSS further.

Based upon the evidence, including Mishra's testimony, the trial court did not believe that the sisters presented a serious alternative. The trial court determined that placement with the relatives would amount to returning the children to their parents' custody. We cannot say that the trial court erred in finding that placement of the children with the relatives was not in the children's best interests.

Accordingly, the decision of the circuit court is summarily affirmed.

Affirmed.