COURT OF APPEALS OF VIRGINIA


Present:    Senior Judges Coleman, Annunziata and Retired Judge Fitzpatrick[*]


TONY L. KING

                                                          MEMORANDUM OPINION[**]
v.       Record Nos. 2075-05-3 and                             PER CURIAM
              2415-05-3                                       APRIL 4, 2006

CARROLL COUNTY DEPARTMENT
 OF SOCIAL SERVICES


                    FROM THE CIRCUIT COURT OF CARROLL COUNTY
                              Brett L. Geisler, Judge

            (Graham M. Parks, on brief), for appellant.

            (S. Vernon Priddy III; Robin J. Kegley, Guardian *ad litem* for the
            infant children; Sands Anderson Marks & Miller, on brief), for
            appellee.


        Tony L. King appeals from the trial court's decision terminating his residual parental rights

to V.K. and C.K. pursuant to Code § 16.1-283(B), (E)(iii) and (E)(iv).  King contends the trial court

erred in finding that the Carroll County Department of Social Services (DSS) met its burden under

Code § 16.1-283(C) and the trial court erred in terminating his residual parental rights.  Upon

review of the record and briefs of the parties, we conclude this appeal is without merit.

Accordingly, we summarily affirm the decision of the trial court.  See Rule 5A:27.

                                  BACKGROUND

        We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

_____

        [*] Judge Fitzpatrick participated in the decision of this case prior to the effective date of
her retirement on March 31, 2006.

        [**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). So viewed, the evidence proved that King lived with his wife, Valeria, V.K., C.K., and Valeria's two children, fifteen-year-old T.R. and nine-year-old P.R. On February 9, 2004, Valeria and T.R. were admitted to a hospital where T.R. was treated for a broken arm, a scalp laceration, and contusions. T.R. suffered these injuries from a beating by King. King was charged with the malicious wounding of Valeria and T.R., and he subsequently pled guilty to the charges.

While Valeria and T.R. were hospitalized and King was in jail, Karen Summer, a friend, took care of P.R.,V.K. and C.K. P.R. showed Summer a videotape, and P.R. stated no one could watch it. A few days later, Summer found three videotapes and watched a portion of one of them. Summer saw King's face, saw Valeria and T.R. enter a room, heard King give directions to Valeria and T.R., and saw Valeria and T.R. engage in sexual intercourse. Summer took the videotapes to the authorities. Valeria and King were charged with a number of crimes involving child pornography and committing sexual acts with T.R. and P.R.

On February 14, 2004, three-year-old V.K. and eight-month-old C.K. were placed in the custody of DSS pursuant to an entrustment agreement signed by Valeria. Later, DSS identified the goal of adoption for V.K. and C.K. At the termination hearing, Investigator Smith testified two of the videotapes contained sexual activity between Valeria, T.R., and P.R., and in one of the videotapes he heard a baby crying and a toddler talking. Smith testified King could be heard "directing" the activities on the videotapes. Barbara Baxley, a foster care worker, testified she did not talk with King and DSS provided no services to him due to his continued incarceration. Baxley testified V.K. and C.K. were doing well and were attached to their foster family.[1]

---

[1] At the termination hearing, Valeria conceded there was sufficient evidence to terminate her residual parental rights to all her children, and she did not appeal the termination order.

ANALYSIS

"Code § 16.1-283 embodies 'the statutory scheme for the . . . termination of residual parental rights in this Commonwealth' [which] . . . 'provides detailed procedures designed to protect the rights of the parents and their child,' balancing their interests while seeking to preserve the family." Lecky v. Reed, 20 Va. App. 306, 311, 456 S.E.2d 538, 540 (1995) (citations omitted). "'In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citations omitted). The trial judge's findings, "'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. (citation omitted).

Code § 16.1-283(B) requires proof, by clear and convincing evidence that "[t]he neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development" and "[i]t is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time."

Code § 16.1-283(E) provides in part:

> The residual parental rights of a parent or parents of a child who is in the custody of a local board . . . may be terminated by the court if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that . . . (iii) the parent has been convicted of an offense under the laws of this Commonwealth . . . that constitutes felony assault resulting in serious bodily injury or felony bodily wounding resulting in serious bodily injury or felony sexual assault, if the victim of the offense was a child of the parent or a child with whom the parent resided at the time of such offense; or (iv) the parent has subjected any child to aggravated circumstances.[2]

---

[2] Code § 16.1-283(E) further provides: "'Aggravated circumstances' means torture, chronic or severe abuse, or chronic or severe sexual abuse, if the victim of such conduct was a

Although there was no evidence appellant sexually abused or physically harmed V.K. or C.K., by its express language, Code § 16.1-283(E) does not limit the authority of the trial court to terminate parental rights only to children who are the direct victims of a parent's felonious assault. The express language of the statute permits the termination of parental rights of other children who would be endangered where a parent has maliciously wounded one of his children or subjected any child to aggravated circumstances. The obvious purpose of the statute is to allow the court to terminate a parent's parental rights when the parent's conduct poses a serious endangerment to a child's well-being without requiring that the court wait until the child is harmed before terminating the parent's rights. In granting DSS's request to terminate King's residual parental rights to V.K. and C.K., the trial judge stated:

> There is a serious and substantial threat to the children's safety if returned to their father's care. There is no possibility that the circumstances leading to the children's placement in care is likely to be corrected within a reasonable time. These children were subjected to a hell here on earth prior to February 9, 2004.

The evidence was clear and convincing that King maliciously wounded T.R., sexually abused T.R. and P.R, and it was in the best interests of V.K. and C.K. to terminate King's residual parental rights.

King argues DSS failed to meet its burden under Code § 16.1-283(C) because it never offered him any rehabilitative services. Since King's parental rights were terminated pursuant to Code § 16.1-283(B) and 16.1-283(E), DSS was not required to provide reasonable and necessary rehabilitative services pursuant to Code § 16.1-283(C).

The record supports the trial court's finding that DSS presented clear and convincing evidence satisfying the statutory requirements of Code § 16.1-283(B), (E)(iii) and (E)(iv) and

child of the parent or a child with whom the parent resided at the time such conduct occurred . . . ."

- 4 -

establishing that the termination of King's residual parental rights was in the best interests of V.K. and C.K.  Accordingly, we summarily affirm the decision of the trial court.  <u>See</u> Rule 5A:27.

<u>Affirmed.</u>