COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Petty and Chafin
Argued at Richmond, Virginia

JENNIFER DAWN WHITE

v.      Record No. 1065-18-2

CITY OF HOPEWELL DEPARTMENT
  OF SOCIAL SERVICES                                    MEMORANDUM OPINION* BY
                                                        JUDGE ROBERT J. HUMPHREYS
JENNIFER DAWN WHITE                                     MARCH 26, 2019

v.      Record No. 1372-18-2

CITY OF HOPEWELL DEPARTMENT
  OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
W. Edward Tomko, III, Judge

Jean M. McKeen (Tomlin & McKeen, PLLC, on brief), for
appellant.

Joan M. O'Donnell (Christopher B. Ackerman, Guardian *ad litem*
for the minor children; Old Towne Lawyer, LLC, on brief), for
appellee.

Jennifer Dawn White ("mother") appeals the December 15, 2017 decision of the Circuit

Court of the City of Hopewell ("circuit court") finding she had abused and neglected her

children, as well as the final orders of the circuit court terminating her parental rights.  Mother

argues variously that the circuit court erred in finding the children were abused, in terminating

her parental rights, and in not placing her children with certain individuals.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

Mother has four children:  M.N., C.N., J.N, and C.D.  The children have three different biological fathers:  Joshua V. Navroski ("Navroski") is the biological father of C.N. and M.N., and the legal father of J.N; Samuel R. Moore, III, is the biological father of J.N.; Jonathan Dean ("Dean") is the biological father of C.D.  All three men are currently incarcerated.

The present case originates from a series of domestic incidents beginning in November 2015, which ultimately saw both mother and Dean, who were living together at the time, arrested and charged with domestic assault and battery in January 2016.

On February 8, 2016, Hopewell Department of Social Services ("DSS") filed a petition alleging abuse and neglect of all four children in the Juvenile and Domestic Relations District Court of the City of Hopewell ("JDR court").  In response, the JDR court filed preliminary child protective orders requiring mother and Dean to comply with all DSS recommendations for services, refrain from drug and alcohol use, and refrain from physically assaulting each other. When neither mother nor Dean appeared for a July 2016 hearing to review their compliance with these orders, DSS subsequently discovered that mother and Dean were both voluntarily hospitalized for drug treatment relating to heroin and pain pills.  When she checked herself into the hospital, mother left the children with Tracy Dorgan ("Mrs. Dorgan") and her husband, strangers recommended by a pastor.  DSS temporarily placed the children with their maternal grandfather ("grandfather") and his wife.

On September 2, 2016, DSS again filed abuse and neglect petitions for each of the children, this time seeking their removal from the household.  These petitions stated that mother had failed to comply with the protective orders and that the children had been exposed to domestic violence and substance abuse.  The JDR court issued an emergency order placing the children in DSS custody.  On October 3, 2016, the JDR court entered an adjudicatory order for

each child finding they had been abused and neglected. On November 7, 2016, the JDR court approved a foster care service plan describing what mother would need to do to regain custody of the children. This plan included drug screening, mental health services, stable employment, safe and stable housing, and attending regular visits with the children.

Mother and Dean stayed with grandfather during this time, until, in early 2017, grandfather obtained a protective order to have mother and Dean excluded from his home. Grandfather testified that mother and Dean had been fighting in the home and that mother had been using heroin. Mother was hospitalized multiple times after being excluded from the home. When not in the hospital, mother was homeless and unemployed and had not begun her substance abuse treatment. As mother had not progressed towards the goals laid out in the previous foster care plan, DSS filed a new plan in July 2017, which recommended relative placement or adoption. The JDR court approved these plans on August 7, 2017, from which mother timely appealed to the circuit court.

A series of hearings was held before the circuit court following mother's appeal. At a December 15, 2017 hearing, the circuit court held that the children were abused and neglected. A subsequent dispositional hearing took place. At the close of this hearing, the circuit court terminated mother's parental rights and approved a goal of adoption. This appeal follows.

## II. ANALYSIS

### A. Standard of Review

"When reviewing a decision to terminate parental rights, we presume the circuit court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 265-66 (2005) (quoting Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 7 (2005)). "Where, as here, a court hears evidence *ore tenus*, its findings are entitled

to the weight of a jury verdict, and they will not be disturbed on appeal unless plainly wrong or without evidence to support them." Gray v. Gray, 228 Va. 696, 699 (1985) (quoting Lapidus v. Lapidus, 226 Va. 575, 580 (1984)).

B. Whether the Circuit Court Erred in Finding the Children Were Abused and Neglected

Code § 16.1-228 defines an abused or neglected child, in relevant part, as one

> [w]hose parents . . . creates or inflicts, threatens to create or inflict, or allows to be created or inflicted upon such child a physical or mental injury by other than accidental means, or creates a substantial risk of death, disfigurement or impairment of bodily or mental functions . . . .

Code § 16.1-228(1).

DSS filed two petitions alleging abuse and neglect, first in February 2016, and again in September 2016 when mother failed to comply with the conditions of the DSS protective order. Mother argues that because the circuit court found her guilty of abuse and neglect based on the second petition, she could only have been found guilty of abusing or neglecting the children based on events occurring between these two dates. She contends that the only act which the circuit court relied on during this period—her leaving the children with strangers while admitting herself to the hospital—was actually an attempt to comply with the DSS protective order by seeking drug treatment.

Mother's argument seems to imply that Code § 16.1-228 is only retrospective, despite the plain language of the statute, which uses terms such as "threatens" and "risk," contemplating the future occurrence of abuse.

Precedent supports both wide retrospective and prospective application of Code § 16.1-228. In Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 342 (2012), the mother appealed the circuit court finding that all three of her children were abused per Code § 16.1-228 when the evidence showed only that one of the children had been abused, but that all three

children had been removed from the home on a previous occasion.  We affirmed, noting other cases where "[w]e have previously upheld a trial court's abused or neglected determination based on a parent's history and treatment of other children." Id. at 363.  We also considered the mother's future behavior, holding that "ample facts support the trial court's determination that [the other children] were in danger of death, disfigurement or impairment of bodily or mental functions, because an unsafe environment existed for all three children . . . .  It cannot be reasonably disputed that mother's continued drug use created an unsafe environment for all three children." Id. at 364.  It is clear that the circuit court was free to consider past behavior as well as present and future risks in determining whether the children were abused or neglected.

C.  Whether the Circuit Court Erred in Terminating Mother's Parental Rights

The circuit court terminated mother's parental rights pursuant to three separate sections of Code §16.1-283—subsections (B), (C)(1), and (C)(2).  This is not unusual.  "[W]e have previously upheld terminations under both subsections of Code § 16.1-283, as well as under one or either of the individual subsections." City of Newport News Dep't of Soc. Services v. Winslow, 40 Va. App. 556, 563 (2003) (citing Ferguson v. Stafford Cty. Dep't of Soc. Serv., 14 Va. App. 333, 340 (1992); Lowe v. Dep't of Pub. Welfare, 231 Va. 277, 281-82 (1986); Lecky v. Reed, 20 Va. App. 306, 313-14 (1995)).  Where, as here, a decision to terminate parental rights is made upon multiple grounds, it may be upheld on any of the grounds independently. See Fields, 46 Va. App. at 7 (declining to examine the evidence for termination under Code § 16.1-283(C)(2) because the termination under Code § 16.1-283(E)(i) was not challenged).  Mother's assignments of error challenge the termination under subsections (B) and (C)(2), but do not address the termination under (C)(1).  Code § 16.1-283(C)(1) provides for the termination of parental rights where it is in the best interests of the child and

> [t]he parent or parents have, without good cause, failed to maintain
> continuing contact with and to provide or substantially plan for the

future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition.

As the circuit court found mother had failed to maintain contact with the child for this period, and none of mother's assignments of error challenge this finding, it is unnecessary to examine the evidence supporting the (B) and (C)(2) terminations, as their consideration would be moot, and any resulting opinion purely advisory.

D.  Whether the Circuit Court Erred in Failing to Award Custody in Lieu of Termination

Mother argues that the circuit court erred in failing to award custody of the children to either grandfather or Mrs. Dorgan because all the conditions for doing so, per Code § 16.1-283(A1), were met. Code § 16.1-283(A) mandates that "the court shall give a consideration to granting custody to relatives of the child, including grandparents." The statute also considers transfer of custody to an "other interested individual." Any such transfer of custody is subject to conditions provided in Code § 16.1-283(A1). Mother argues that because these conditions are met, the circuit court erred by terminating her rights rather than simply transferring custody of the children to either grandfather or Mrs. Dorgan.

Contra mother's argument, Code § 16.1-283(A) merely requires that the circuit court *consider* relative placement—it does not require it. It is not the case that if the factors in Code § 16.1-283(A1) are met, relative placement must necessarily follow, but rather that if the court decides on relative placement, these factors must be satisfied. The same holds for consideration of an "other interested individual." In this case, DSS did meet its statutory mandate by investigating relative placement. At one point, four of the children resided with grandfather. Two still do. DSS intends to proceed with adoption by grandfather for the two children currently

residing with him. Likewise, Mrs. Dorgan testified before the circuit court, giving the circuit court the opportunity to consider her as a placement option. DSS met its investigative requirement in this case, and that consideration is all that Code § 16.1-283(A) imposes.

### III. CONCLUSION

Mother's challenge to the termination of her parental rights is undercut by her failure to contest all of the grounds upon which those rights were terminated. As a result, any judgment on that matter would be advisory. Mother's attempts to temporally and substantively narrow the permissible evidence of abuse fail for lack of jurisprudential support. Evidence of abuse need not be cabined to a specific time frame, nor even a specific child, and a child's prospective welfare is an appropriate consideration. Concerning custody transfers in lieu of termination of parental rights, mother reads a mandatory transfer into the statute where none exists. The circuit court was only required to consider such placements and did so. For all of these reasons, the judgment of the circuit court is affirmed.

Affirmed.