COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Coleman and Willis


FRANCISCO ZAVALA

                                      MEMORANDUM OPINION[*]
v.        Record No. 1428-98-4            PER CURIAM
                                       OCTOBER 6, 1998
ARLINGTON COUNTY DEPARTMENT
 OF HUMAN SERVICES


             FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                    William T. Newman, Jr., Judge

             (Sean D. O'Malie; Pelton, Balland, Young,
             Demsky, Baskin & O'Malie, P.C., on brief),
             for appellant.

             (Mary E. Craig, Assistant County Attorney, on
             brief), for appellee.


     Francisco Zavala (father) appeals the decision of the

circuit court terminating his residual parental rights.  The

circuit court found that the Arlington County Department of Human

Services (DHS) presented clear and convincing evidence sufficient

under Code § 16.1-283(C) to support its petition to terminate the

parental rights of father and his wife to their three children.

The mother did not appeal the circuit court's termination

decision.  On appeal, father contends that the trial court erred

in finding the evidence sufficient.  Upon reviewing the record

and briefs of the parties, we conclude that this appeal is

without merit.  Accordingly, we summarily affirm the decision of

the trial court.  See Rule 5A:27.

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Development, 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

> "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." The trial court's judgment, "when based on evidence heard ore tenus, will not be disturbed on appeal unless plainly wrong or without evidence to support it."

Id. (citations omitted). "Code § 16.1-283 embodies 'the statutory scheme for the . . . termination of residual parental rights in this Commonwealth' [which] . . . 'provides detailed procedures designed to protect the rights of the parents and their child,' balancing their interests while seeking to preserve the family." Lecky v. Reed, 20 Va. App. 306, 311, 456 S.E.2d 538, 540 (1995) (citations omitted).

Code § 16.1-283(C) provides that the residual parental rights of a child placed in foster care may be terminated if the trial court finds it is in the best interests of the child and, in pertinent part,

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period not to exceed twelve months to remedy substantially the conditions which led to the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

- 2 -

Code § 16.1-283(C)(2).

DHS initially provided services to the family in 1991. Subsequently, DHS provided numerous services in connection with repeated emergency removals due to abuse and neglect of the children. The first removal occurred following an incident of domestic violence by father against the mother and the two older children. The mother was psychotic and was hospitalized temporarily. Father acknowledged that he could not care for the children. He did not visit the children while they were in foster care. DHS offered father parenting classes and home-based services with the goal of returning the children to their home, but neither father nor mother worked successfully with the service providers. Additional incidents of domestic violence occurred. Although the mother continued to suffer repeated bouts of mental illness, she attended therapy and took the prescribed medication only sporadically.

Father admitted that he had had problems with alcohol previously, but denied he had problems with domestic violence. He also denied that the mother suffered from mental illness. Dr. Gloria Morote, a licensed clinical psychologist, testified that father's test results indicated that he had both motor and neurological abnormalities, resulting in poor short term memory, poor attention, poor judgment, inability to handle stress, and aggression. Father's behavior indicated that he had an impaired perception of reality. While Dr. Morote believed father's

neurological problems were possibly organic in nature, she was pessimistic about the likelihood that he would improve because he refused further neurologic testing to confirm the basis for his problems and refused other treatment which could have alleviated his problems.  Father's neurological problems left him unable to work with others, unable to accommodate others, and unable to modify his behavior.

DHS provided numerous services for the parents, including parenting classes, anger management classes, medical and psychological assistance, home-based services, and transportation assistance.  DHS also relied upon Spanish language interpreters and workers, both to ensure accurate communication and to avoid any cultural bias or misunderstandings.  Father completed several portions of the programs required, but did so with such resistance that the services were ineffective.

Credible evidence demonstrated that, while in their parents' custody, the children received poor care.  They dressed inappropriately for cold weather and went to day care hungry and unclean.  There were repeated incidents of domestic abuse.  The children's therapist described the oldest child as withdrawn, worried, sad, and suffering from feelings of helplessness.  The middle child spoke of feeling "like a grown-up on the inside," and was described as precocious and overprotective of both her older and younger siblings.  The youngest child was withdrawn and intensely angry.  All three children needed permanence and

consistency in a home with limits, but not anger.

Based upon the evidence, the trial court found that the children suffered neglect and abuse, including inappropriate clothing, poor hygiene, and inadequate food; that the abuse and neglect presented a serious and substantial threat to the children's life, health, and development; and that it was not reasonably likely that those conditions could be substantially corrected or eliminated so as to allow the children's safe return to their parents within a reasonable period of time. The trial court also found that father was unwilling or unable to remedy substantially those underlying conditions, notwithstanding the efforts made by agencies. The trial court expressly found that father suffered from a form of dementia and refused neurological examination or appropriate services.

Father contends that he complied substantially with the service plans and that the trial court erred by failing to grant his motion to reconsider and continue the case for the provision of additional services. We disagree. The evidence demonstrated that the children had spent over half their lives in foster care. The court did not err in denying father's request for additional time within which to remedy the underlying problems. "It is clearly not in the best interest of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495

(1990).

Because credible evidence supported the trial court's determination that DHS met the statutory requirements of Code § 16.1-283 to terminate father's parental rights, that determination was not plainly wrong or lacking in evidence to support it.  Accordingly, the decision of the trial court is summarily affirmed.

<u>Affirmed</u>.