COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Lemons and Senior Judge Cole
Argued at Richmond, Virginia


LINDA BIVINS
                                       MEMORANDUM OPINION* BY
v.    Record No. 0304-99-2             JUDGE MARVIN F. COLE
                                         NOVEMBER 2, 1999
NEW KENT COUNTY DEPARTMENT
 OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF NEW KENT COUNTY
                    William H. Shaw, III, Judge

          (Rhonda L. Earhart, on brief), for appellant.
          Appellant submitting on brief.

          (James E. Cornwell, Jr.; C. Michael DeCamps;
          Sands, Anderson, Marks & Miller, on brief),
          for appellee.  Appellee submitting on brief.


     Linda Bivins (Bivins) appeals the decision of the circuit

court terminating her parental rights to her children, Adam and

Elisabeth Sewell.  Bivins contends that the record contains no

indication that the New Kent County Department of Social Services

(DSS) filed with the juvenile and domestic relations district

court a foster care plan meeting the requirements of Code

§ 16.1-281(B).  Bivins also contends that DSS failed to present

clear and convincing evidence sufficient under Code § 16.1-283 to

terminate her parental rights.  We find that the contentions

---

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

Bivins raised on appeal are without merit, and we affirm the decision of the trial court.

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Development, 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

> "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." The trial court's judgment, "when based on evidence heard ore tenus, will not be disturbed on appeal unless plainly wrong or without evidence to support it."

Id. (citations omitted).

Both children are special needs children with cerebral palsy. Elisabeth, who was born prematurely after Bivins stabbed herself three times in the vagina, weighed three pounds at birth. At the time she came into foster care, Elisabeth was developmentally delayed and mentally retarded. She suffered from extremely poor hygiene. She was a victim of at least one instance of sexual abuse by her father, Dennis Sewell (Sewell). Elisabeth had difficulty sleeping, with nightmares, night wanderings, and bedwetting.

At birth, Adam weighed two and one-half pounds and tested positive for cocaine. At age four, when he was placed in foster care, he weighed twenty-two pounds, and could not speak, walk,

-

or eat.  His dental hygiene was so poor that he had fourteen teeth extracted.

At the time the children were placed in foster care in December 1995, Bivins was incarcerated on charges of prescription drug fraud.  The children were then in the custody of their father and his parents, John and Rose Murdock.

Both children made great strides while in foster care.  At the time of the termination hearing, each demonstrated greater ability to function and to care for themselves.  Both children continued to face substantial medical and developmental challenges in the future.

### Foster Care Plan

Code § 16.1-281 requires social services agencies such as DSS to develop foster care plans detailing the services to be offered children placed in their legal custody.  Subsection (B) provides, in pertinent part, that "[i]f consistent with the child's health and safety, the plan shall be designed to support reasonable efforts which lead to the return of the child to his parents or other prior custodians within the shortest practicable time which shall be specified in the plan."  Bivins contends that the record fails to demonstrate that a foster care plan meeting the statutory requirements of Code § 16.1-281 was filed with the juvenile and domestic relations district court.  Specifically, although Bivins admits that a foster care plan dated August 4, 1998 was prepared, she contends that an earlier

-

plan was the plan documenting termination of her parental rights as being in the best interests of the children.

Bivins concedes that the plans were admitted into the juvenile and domestic relations district court record and DSS was not required to refile them in the circuit court during the trial de novo.  See Todaro v. Alexandria Dep't of Social Servs., 226 Va. 307, 309 S.E.2d 303 (1983).  The transcript of the circuit court hearing demonstrates that the foster care plans were admitted into evidence before the circuit court by stipulation and without objection.  The record on appeal contains the plans.  The trial court approved the plan "filed herein by [DSS]," and its order is presumed to be a correct recitation of the facts.  We find no merit in this challenge to the order approving the foster care plans.

## Sufficiency of the Evidence

Bivins contends that the trial court erred when it found that DSS presented clear and convincing evidence sufficient to support termination of her parental rights pursuant to Code § 16.1-283.  "Code § 16.1-283 embodies 'the statutory scheme for the . . . termination of residual parental rights in this Commonwealth' [which] . . . 'provides detailed procedures designed to protect the rights of the parents and their child,' balancing their interests while seeking to preserve the family." Lecky v. Reed, 20 Va. App. 306, 311, 456 S.E.2d 538, 540 (1995) (citations omitted).  We find no error.

-

The trial court found that clear and convincing evidence supported the termination of Bivins' parental rights pursuant to Code § 16.1-283(B).  Code § 16.1-283(B)(1) and (2) provide, in pertinent part, that the parental rights of parents of a child placed in foster care after being found by a court to be neglected or abused may be terminated if the court finds that termination is in the best interests of the child and finds clear and convincing evidence that:

> 1.  The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2.  It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time.  In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

The trial court also found that DSS presented sufficient evidence under Code § 16.1-283(C) to terminate Bivins' parental rights.  Under Code § 16.1-283(C)(2), the parental rights of a child placed in foster care may be terminated if the court finds by clear and convincing evidence that it is in the best interests of the child and that:

> 2.  The parent . . ., without good cause, [has] been unwilling or unable within a

-

reasonable period not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

The evidence established that the children were placed in foster care in 1995, while Bivins was incarcerated and the children were in the custody of Sewell and the Murdocks. The trial court reviewed the evidence based upon the steps Bivins had taken to satisfy her responsibilities under the foster care plan prepared after her release from prison in January 1997. Pat Woods, the DSS social worker, testified that DSS made arrangements for Bivins to have visitation with the children, kept her informed of doctors' appointments and school meetings, and provided a contract worker to assist Bivins with parenting skills during visitation. Woods testified that, despite the

-

requirements set out by court order, Bivins failed to file a psychological assessment with DSS or to cooperate with the home study and background check on her fiancé.

At trial, Bivins admitted that she had problems with drug abuse, particularly abuse of prescription painkillers. She admitted that a March 1998 urine test revealed evidence of drug use, but testified that she was undergoing drug counseling. While she admitted that she attended only some of the children's medical appointments and did not attend any meetings at school, Bivins testified that she lived too far away to attend those meetings regularly. She also testified that transportation and finances prevented her from complying with some of her responsibilities under the foster care plan. Bivins said that she was sometimes late for visitation because it was impossible to get to New Kent from Norfolk for a 9:00 visitation on Saturdays due to traffic. Sometimes, their car would break down and they needed to rent one. She was out of work for over a year as a result of a work-related injury, and her fiancé also lost his employment. She would not call DSS very often because it was too expensive to make the long distance call. She also refused to pay the $15 necessary to complete the background check of her fiancé because they did not have the money. Bivins indicated at trial that she would gladly pay for the background check now and would be willing to move from Norfolk to New Kent.

-

While Bivins contends that DSS failed to provide her with sufficient services to allow the children to return to her, the record supports the trial court's finding that Bivins failed to substantially correct the conditions which led to the children's foster care placement despite DSS's reasonable rehabilitative efforts. It is true that Bivins completed some parenting and anger control classes while in prison. However, the evidence indicated that she failed to implement what she had learned into her dealings with the children. Nancy Geary, Elisabeth's therapist, indicated that Elisabeth became upset after visitation with Bivins and complained that Bivins "smacked" her in the face. Significantly, Geary noted that Elisabeth changed from wanting to be with Bivins to not wanting to be with her.

> That's because of the lack of parent-child relationship. That's not necessarily the lack of contact. The contact that she did have was not successful, was not promoting toward a loving relationship.

Geary also noted that Bivins failed to follow through on Geary's offers of assistance or her recommendations that Bivins take a parenting class, receive psychological assessment, or have individual counseling. Bivins also threatened her following a previous court hearing.

Tammy Bays, the contract worker supervising the visitations, testified that Bivins was often frustrated dealing with the children and focused on herself rather than attending to the needs of the children. Bivins lacked an understanding of

-

the severity of her children's problems and, lacking that understanding, failed to provide the parenting skills necessary to assist the children.

While Bivins indicated her willingness in the future to live closer to the children, she made no effort to do so in the past despite her repeated complaints that the distance made it impossible for her to attend the children's medical appointments, educational planning sessions, or arrive on time for visitation. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming [her] responsibilities." Kaywood v. Halifax County Dep't of Social Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). The trial court was not required to place more credibility in her proposed plans for the future than warranted by her actions in the past. Moreover, other evidence demonstrated that increased contact, without an improvement in Bivins' parenting and anger management skills, would not be in the children's best interests.

Evidence in the record fully supports the findings of the trial court that DSS presented clear and convincing evidence sufficient under Code § 16.1-283(B) and (C) to terminate Bivins' parental rights to Adam and Elisabeth.

-

Accordingly, the decision of the circuit court is affirmed.

_Affirmed._