COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Annunziata and Frank


CHRISTOPHER FOREMAN

                                    MEMORANDUM OPINION*
v.    Record No. 1432-99-4              PER CURIAM
                                     DECEMBER 14, 1999
FAIRFAX COUNTY DEPARTMENT
 OF FAMILY SERVICES


              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                      Henry E. Hudson, Judge

          (Mark Bodner, Guardian ad litem, on brief),
          for appellant.

          (David P. Bobzien, County Attorney; Robert
          Lyndon Howell, Deputy County Attorney;
          Dennis R. Bates, Senior Assistant County
          Attorney; Darrell D. Jackson, Assistant
          County Attorney, on brief), for appellee.


     Christopher Foreman (Foreman) appeals the decision of the

circuit court terminating his parental rights to Roxanne Cierra

Sheppard.  The circuit court found that the Fairfax County

Department of Family Services (DFS) presented clear and convincing

evidence establishing the statutory requirements set out in Code

§ 16.1-283(C)(1) and (2) for termination of Foreman's parental

rights.  On appeal, Foreman contends that the trial court erred in

finding DFS presented sufficient evidence to prove that (1) the

child suffered as a result of neglect and that the neglect

─────────────────────
     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

presented a serious and substantial threat to the child's development; and (2) DFS made reasonable and appropriate efforts to communicate with Foreman and to strengthen the parent-child relationship. Foreman also raises a challenge under Code § 16.1-283(A) to the circuit court's jurisdiction to hear the DFS petition. Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

According to the evidence, Foreman left Roxanne, who was four years old at the time, with her mother while he went to a party. When he returned at 2:00 a.m., the mother was gone. Foreman allegedly asked a neighbor to watch the child while he searched for the mother. However, on August 10, 1997, the police, responding to a call of unattended children, found Roxanne and a two-year-old boy wandering outside at 2:30 a.m. Foreman called DFS on August 11, 1997, seeking custody of Roxanne. Foreman was denied custody following a hearing in the juvenile and domestic relations district court on August 15, 1997. By district court order entered September 4, 1997, Roxanne was found to be "an abused and/or neglected child as defined in Va. Code § 16.1-228(5)." A foster care plan with the goal of returning Roxanne home was developed, under which, among other items, Foreman was required to participate in parenting classes; complete an alcohol and drug abuse evaluation, follow any recommended treatment, and submit to random drug and alcohol tests;

-

participate in family counseling; and undergo a psychosocial assessment. Evidence also indicated that Foreman and the mother had previous dealings with DFS and that their parental rights to several other children had previously been terminated.

Foreman testified at trial that he saw his daughter every week after she was taken into foster care. The DFS worker testified that Foreman first saw the child on July 23, 1998 and saw her six more times before September 2, 1998. Foreman was incarcerated on September 9, 1998 on habitual offender charges, with an anticipated release date in August 1999. Foreman testified that he had completed a parenting class and had partially completed a drug and alcohol class prior to his incarceration. DFS presented evidence that Foreman was dismissed from the drug and alcohol class for non-compliance and that similar services were available while Foreman was in prison.

Foreman's mother testified that Roxanne and Foreman were welcome to live in her home and that she would assist him. She acknowledged that she works and that her husband is too ill to care for the child. No additional childcare arrangements were currently planned.

### Standard of Review

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best

-

interests." Logan v. Fairfax County Dep't of Human Development, 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

> "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." The trial court's judgment, "when based on evidence heard ore tenus, will not be disturbed on appeal unless plainly wrong or without evidence to support it."

Id. (citations omitted).

The trial court found that DFS presented clear and convincing evidence meeting the statutory requirements set out in Code § 16.1-283(C)(1) and (2) (Michie 1999). "Code § 16.1-283 embodies 'the statutory scheme for the . . . termination of residual parental rights in this Commonwealth' [which] . . . 'provides detailed procedures designed to protect the rights of the parents and their child,' balancing their interests while seeking to preserve the family." Lecky v. Reed, 20 Va. App. 306, 311, 456 S.E.2d 538, 540 (1995) (citations omitted).

Code § 16.1-283(C)(1) provides, in pertinent part, that the residual parental rights of a parent of a child placed in foster care may be terminated if the court finds by clear and convincing evidence that it is in the best interests of the child and that:

> The parent . . . [has], without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six

-

months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship.  Proof that the parent . . . [has] failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition.

Alternatively, Code § 16.1-283(C)(2) provides, in pertinent part, that the parent's parental rights may be terminated if the court finds by clear and convincing evidence that it is in the best interests of the child and that

[t]he parent . . ., without good cause, [has] been unwilling or unable within a reasonable period not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.  Proof that the parent . . . , without good cause, [has] failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent . . . and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition.  The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

-

## Neglect

Foreman contends that the trial court erred by finding that the child suffered as a result of neglect and that the neglect she suffered presented a serious and substantial threat to the child's development. Foreman's argument arises under Code § 16.1-283(B)(1). The trial court made no finding under this section and, therefore, this contention is without merit. Nonetheless, we note that the initial determination that the child was an abused and/or neglected child was based upon the circumstances under which the child was taken into custody. The child, then four, and a two-year-old boy were allegedly left in the care of a ten-year-old boy for a number of hours by the child's mother while Foreman attended a party until 2:00 a.m. The child was found wandering the streets, unattended, at 2:30 a.m. According to the testimony of Amy Yeates, the DFS worker who removed the child, Foreman admitted that he did not live in the home with the child or her mother; that he saw them about once a month; that he and the mother had bouts of domestic violence; and that he drank. The proposed foster care plan contained specific steps through which Foreman could address both his parental responsibilities and his abuse of alcohol. We find sufficient evidence in the record supporting a finding that the child was neglected and that the neglect posed a serious and substantial threat to the child's development.

-

Reasonable and Appropriate Efforts on the Part of DFS

Appellant also contends that the trial court erred in finding that DFS presented clear and convincing evidence that it made appropriate efforts to assist him to alleviate the conditions resulting in the child's foster care placement.  We find no error.

The foster care plan initially prepared in 1997 included specific steps that were aimed at improving Foreman's parenting skills and addressing his ongoing problems with alcohol.  While Foreman contended that he completed a parenting skills class, the evidence indicated that this was a four class "Introduction to Parenting" course, rather than the required twenty-six week parenting class.  In the nearly two years since the child's placement in foster care, Foreman failed to complete a recommended drug and alcohol abuse class.  At trial, he argued that he would be able to complete one in just a few more months.

We find substantial evidence in the record supporting the trial court's finding that DFS made appropriate and reasonable efforts to help Foreman regain custody of his daughter.  DFS had attempted to provide services to Foreman and the mother in the past, with little result.  In this instance, DFS provided Foreman with an initial referral packet to complete, which he never returned.  Foreman began drug and alcohol services through the county in an intensive outpatient group, but failed to contact his counselor when he was incarcerated, despite the

-

requirement that participants notify the counselor if they are unable to attend.  Alcohol and drug services were available to him while he was incarcerated.  Therefore, the record demonstrates that appropriate services were offered by DFS but Foreman made little or no effort to respond to those offers. "The law does not require the [DFS] to force its services upon an unwilling or disinterested parent."  Barkey v. Commonwealth, 2 Va. App. 662, 670, 347 S.E.2d 188, 192 (1986).

### Jurisdiction of the Circuit Court

Foreman also contends that the trial court lacked jurisdiction because DFS failed to file with the juvenile and domestic relations district court the necessary foster care plan documenting termination of his parental rights as in the child's best interests prior to filing its petition seeking termination, in violation of the requirements of Code § 16.1-283(A).  Foreman admits that this issue is raised for the first time on appeal. However, challenges to subject matter jurisdiction may be raised at any time, even for the first time on appeal.  See generally Morrison v. Bestler, 239 Va. 166, 170, 387 S.E.2d 753, 756 (1990).

The record demonstrates that the revised foster care plan with the changed goal of adoption was filed in the juvenile and domestic relations district court on March 18, 1998.  The petition seeking termination of parental rights was filed on March 30, 1998.  Therefore, this issue is without merit.

-

The evidence presented below demonstrated that the child was in a stable foster home where she was loved and cared for. The foster parents expressed an interest in adopting the child if that option were available. The child had emotional and learning difficulties arising from the lack of stability in her earlier years that the foster parents were addressing. She had seen Foreman only sporadically since coming into foster care. She had seen her grandmother only three times since 1997.

Foreman admitted that he had little or no contact with his other six children; he was unsure whether his parental rights had been terminated. He indicated to the trial court that he had discussed with his mother having Roxanne come to live with her only a month or two before the trial. His prospective plans were unclear and his past history unpersuasive that he would make the necessary changes in his life to provide for the child if she were returned to him. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming . . . responsibilities." Kaywood v. Halifax County Dep't of Social Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Evidence in the record supports the trial court's decision that DFS presented clear and convincing evidence proving that termination of Foreman's parental rights was in the best interest of the child and meeting the requirements of Code

-

§ 16.1-283(C)(1) and (2).  Accordingly, the decision of the circuit court is summarily affirmed.

<u>Affirmed.</u>