COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Frank and Clements


SHANNA HARVEY

MEMORANDUM OPINION[*]
v.    Record No. 0637-03-2                    PER CURIAM
                                           AUGUST 26, 2003
CITY OF RICHMOND
 DEPARTMENT OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Theodore J. Markow, Judge

            (Rhonda L. Earhart; Boulevard Law Offices, on
            brief), for appellant.

            (Sarah M. Denham, Assistant City Attorney, on
            brief), for appellee.

            (Sharon S. England, on brief), Guardian ad
            litem for the minor child.


      Shanna Harvey (mother) appeals a decision of the trial court

terminating her residual parental rights in her daughter, I.H.

(daughter) pursuant to Code § 16.1-283(B)(2), 16.1-283(C)(1) and

16.1-283(C)(2).  On appeal, mother contends the evidence was

insufficient to support the termination.  Upon reviewing the

record and briefs of the parties, we conclude that this appeal is

without merit.  Accordingly, we summarily affirm the decision of

the trial court.  See Rule 5A:27.

_____

     [*] Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

On appeal, we view the evidence and all the reasonable inferences in the light most favorable to the City of Richmond Department of Social Services (the Department) as the party prevailing below.  See McGuire v. McGuire, 10 Va. App. 248, 250, 391 S.E.2d 344, 346 (1990).

BACKGROUND

Daughter was born on June 14, 1999.  On October 11, 1999, when she was about four months old, daughter first came into the custody of the Department when she was diagnosed with failure to thrive because she was not receiving proper nutrition.  On October 18, 1999, daughter was placed back in mother's custody under a preliminary child protective order, which mandated that mother cooperate with the Department and maintain medical appointments for daughter.

Based on mother's non-compliance with the protective order, the Department again removed daughter from mother's custody in February 2000.  Daughter was placed in the care of a foster mother who reported that daughter was so malnourished she was "almost in a comatose state" and could not hold up her head.  For the first several days, the foster mother had to awaken daughter every four hours to feed her.

Brinette Jones, a family stabilization worker, worked with mother from January 2000 until December 2000.  Jones testified that in January 2000, daughter was seven months old and weighed only twelve pounds.  Jones stated that daughter's primary need was

-

to be fed every three hours.  Jones gave mother referrals to programs that would assist her with medical needs, parenting classes, housing, counseling, and employment.  Jones stated that mother did not fully cooperate with the housing referrals, and she missed numerous counseling appointments.  Mother completed a six-week parenting class.  Mother also missed several of daughter's medical appointments.

As a result of the initial poor care daughter received, daughter has extensive special needs, requiring individualized attention.  Dr. Josie Castaldi, a clinical child psychologist, diagnosed daughter with attention deficit hyperactivity disorder, possible attachment issues, sensory integration issues, and social interaction difficulties.  She requires constant supervision because she lacks an age appropriate awareness of danger. Daughter rocks, hits, and bites herself.  Dr. Castaldi also opined that daughter is "an ongoing risk for developmental delays, but she is making progress" while in the care of the foster family.

Laura Martin, an occupational therapist, worked with daughter once a week from December 2000 until June 2002.  She stated that daughter needs constant supervision and a strict sensory program. Mother attended five of nine scheduled therapy sessions in order to receive training in the sensory program and to familiarize herself with daughter's needs and limitations.  Martin testified that, after attending the sessions, mother did not understand the program or her daughter's needs despite the fact that Martin had

-

discussed the program with her and provided her with written materials.  In one session, Martin asked mother to supervise daughter while mother's other child was also present.  However, Martin stated that things became "pretty chaotic," daughter climbed onto shelves, and Martin had to intervene to control daughter's behavior.

Hope Fowler is a foster care worker who has worked with the family the entire time daughter has been in foster care.  She testified that the first foster care plan had a goal of return to parent.  Since Fowler has worked with the family, mother has lived in ten different places and had about seven jobs.  Mother refused assistance with housing and employment, failed to complete counseling, and completed one of two parenting programs.  Mother also finished an anger management class.

In March 2001, Fowler filed another foster care plan with the goal of placement with relatives.  However, after considering the maternal grandmother and three other relatives, she was unable to find a suitable relative with whom to place daughter.

A clinical psychologist, Dr. Penny Sprecher, has diagnosed mother with intermittent explosive disorder and dependent personality disorder.  Dr. Sprecher stated that these disorders would make it difficult to parent a special needs child due to the "unpredictable explosiveness" and "difficulty in making independent decisions" associated with the disorders. Dr. Sprecher also testified that mother continues to deny the

-

seriousness of daughter's condition. At the time of her January 2002 evaluation of mother, Dr. Sprecher opined that it would not be in daughter's best interests to be returned to mother. Dr. Sprecher recommended that mother continue in therapy. However, mother last attended a counseling session in August 2002. Mother's counselor also testified that mother "was not highly motivated" to work on parenting issues. Mother told the counselor that she had already completed parenting and anger management classes.

Since daughter has entered foster care, mother has missed numerous scheduled visits and was sometimes significantly late for a visit. In addition, Fowler testified that she observed mother interact inappropriately with daughter during the visits, such as talking on her cell phone for five or ten minutes and slowly responding to daughter's needs.

Pamela Taylor, a family service coordinator, was an in-home service worker for mother from late May 2002 to February 2003. She offered mother services and information related to employment, housing, parenting classes, child care for mother's younger child, and obtaining her GED. Taylor testified mother often cancelled employment appointments and was having trouble paying the rent on her apartment. Mother did not engage in any of the opportunities referred to her by Taylor, and, at one point, she blocked Taylor from calling her telephone number. Mother also cancelled at least ten of twenty scheduled appointments with Taylor. When daughter

-

visited mother at her home, mother provided no structure or activities for daughter and simply allowed her to "run around" the apartment. Taylor also testified that mother's home was "in complete disarray" with empty beer bottles and trash scattered around. Taylor opined that mother is not currently in a position to parent daughter and she will not be in the foreseeable future.

The guardian ad litem for daughter recommended that it was in the best interests of daughter to terminate mother's parental rights, stating that mother did not have the ability to overcome her deficits and that she lacks the skills necessary to handle daughter.

In April 2002, Fowler filed a foster care plan with the goal of adoption. The juvenile and domestic relations district court approved the plan and terminated mother's parental rights. Mother appealed that decision to the trial court. The trial court found by clear and convincing evidence that it was in daughter's best interests to terminate mother's parental rights and that the Department had met its burden pursuant to Code § 16.1-283(B)(2), 16.1-283(C)(1) and 16.1-283(C)(2).

## ANALYSIS

"Code § 16.1-283 embodies the statutory scheme for the termination of residual parental rights in this Commonwealth." Lecky v. Reed, 20 Va. App. 306, 311, 456 S.E.2d 538, 540 (1995).

Pursuant to Code § 16.1-283(B), one of the subsections under which the trial court terminated mother's parental rights,

-

the residual parental rights to a child who has been found by the court to be abused and neglected and placed in foster care may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time.

Clear and convincing evidence is "'that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.'" Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 21, 348 S.E.2d 13, 16 (1986) (citation omitted).

The evidence showed that the Department removed daughter from mother's custody twice before daughter was seven months old. At the age of seven months, daughter weighed only twelve pounds and was practically in a coma because she was malnourished and lacked appropriate medical care. Manifestly, such circumstances presented a serious risk to daughter's health and safety.

-

Daughter continues to suffer from several disorders as a result of her inferior initial care, and the evidence showed that mother lacks the skills necessary to address the special needs and constant attention daughter requires. One expert opined that mother was in denial concerning the reality of daughter's condition. Moreover, despite numerous services and referrals offered to mother related to housing, employment, and counseling, mother had not improved the family's living conditions, and the evidence supported a finding that it was not reasonably likely that the conditions resulting in the neglect would be substantially corrected so as to allow daughter's safe return to mother.

Code § 16.1-283(C)(1) provides that parental rights may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

> The parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship.

The evidence showed that mother did not consistently visit daughter and was often one-half hour late for the one-hour visits. Mother sometimes spoke on the telephone during her

-

visitation time, and she failed to plan any activities when daughter visited mother at her residence. At one point, mother blocked the in-home service worker from calling her home telephone number, preventing the worker from scheduling any visits with daughter. Mother would also cancel visits at the last minute and fail to return telephone calls.

In addition, mother failed to demonstrate that she substantially planned for daughter's future, notwithstanding the reasonable efforts of the Department. Although the Department informed mother of her obligations under the foster care plan and offered her numerous services, including in-home services, she failed to complete most of her obligations, despite the passage of three years since daughter was placed in foster care. "The Department is not required 'to force its services upon an unwilling or disinterested parent.'" Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 130, 409 S.E.2d 460, 463-64 (1991).

Code § 16.1-283(C)(2) requires proof, by clear and convincing evidence, that (1) the termination is in the best interests of the child, (2) "reasonable and appropriate" services have been offered to help the parent "substantially remedy the conditions which led to or required continuation of the child's foster care placement," and (3) despite those services, the parent has failed, "without good cause," to remedy those conditions.

-

The evidence established that the Department had worked with mother for over three years, offered her numerous services to help her find adequate housing and regular employment and offered her other educational services and referrals. Therefore, the Department made "reasonable and appropriate efforts" to help mother remedy the conditions which both "led to" and "required continuation of" daughter's foster care placement in 1999. Nonetheless, mother failed to make reasonable progress toward eliminating the conditions which led to daughter's foster care placement. For example, mother refused some of the Department's recommended services and she only partially complied with other programs. She has been unable to integrate the skills necessary to properly care for daughter. In addition, daughter, who has highly specialized needs, is making progress while she is in foster care, and she is attending structured and specialized programs that address her needs. Furthermore, at the time of the trial court's hearing, daughter was three and one-half years old and she had been in foster care for three years. "It is clearly not in the bests interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990) (citation omitted).

Moreover, the record shows that the Department considered and investigated placing daughter with a relative. However, for

-

various reasons, the Department was unable to locate a suitable relative or situation.

The evidence in this case supports the trial court's findings.  Thus, we cannot say that the trial court's findings that the conditions of Code § 16.1-283(B)(2), 16.1-283(C)(1) and 16.1-283(C)(2) have been established was plainly wrong or without evidence to support it.  Accordingly, we summarily affirm the decision of the trial court.

<u>Affirmed.</u>