COURT OF APPEALS OF VIRGINIA


Present:  Judges Bumgardner, Kelsey and Senior Judge Hodges


KELLY BAKER

                                        MEMORANDUM OPINION*
v.   Record No. 0598-03-2                    PER CURIAM
                                         SEPTEMBER 2, 2003
RICHMOND DEPARTMENT OF
 SOCIAL SERVICES


              FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                      Melvin R. Hughes, Jr., Judge

              (Richard G. White, Jr., on brief), for
              appellant.

              (Sarah M. Denham, Assistant City Attorney;
              Rene S. Hicks, Guardian ad litem for the
              minor child, on brief), for appellee.


     Kelly Baker (mother) appeals an order of the trial court

terminating her residual parental rights with respect to her

son, Hakeem Baker.  The trial court found by clear and

convincing evidence that termination of mother's rights served

the best interests of her son and that mother had been unwilling

and/or unable to remedy the conditions which required the

intervention of the Richmond Department of Social Services

(RDSS).  See Code § 16.1-283(C)(2).  In addition, the trial

court approved the goal of adoption proposed by the RDSS foster

care plan.  Mother contends the evidence was insufficient to

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

support the decision by the trial court to terminate her parental rights. Specifically, she claims that (1) RDSS failed to investigate relatives, beyond Hakeem's maternal grandmother, as potential foster care alternatives, and (2) that RDSS failed to make reasonable efforts to provide assistance to mother in obtaining the services suggested under the foster care plan. Upon reviewing the record and the briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. Rule 5A:27.

### Background

On appeal, we view the evidence and all reasonable inferences in the light most favorable to RDSS, the prevailing party below. See McGuire v. McGuire, 10 Va. App. 248, 250, 391 S.E.2d 344, 346 (1990). So viewed, the evidence proved that mother, homeless and unemployed, gave birth to Hakeem on August 19, 2001. RDSS assumed custody of Hakeem on August 28, 2001 and initiated the foster care process. The goal of the initial foster care plan was to place Hakeem with relatives. In pursuit of that goal, RDSS investigated Hakeem's maternal grandmother, Brenda Baker, as a possible foster care alternative; she was the only relative identified to RDSS as a potential candidate. Additionally, the initial foster care plan required mother to undergo substance abuse and mental health evaluations at Richmond Behavioral Health Authority (RBHA) and to enroll in parenting classes provided by Stop Child Abuse Now (SCAN). RDSS

- 2 -

informed mother of the need for substance abuse services because Hakeem's blood tests indicated exposure to cocaine. RDSS supplied mother with names and telephone numbers to schedule the necessary services.

Mother never provided RDSS with evidence that she completed psychiatric services from RBHA or the SCAN parenting classes. Mother attended the supervised visits with Hakeem but showed limited parenting skills and, at times, a lack of interest.

By January 28, 2002, RDSS and Bragail Williams, the social worker assigned to the case, petitioned the Richmond Juvenile and Domestic Relations District Court (JDR court) for a foster care review hearing. At that time, RDSS's goal for Hakeem changed from placement with a relative to adoption. In addition to mother's failure to complete, or even enroll in, the necessary services, RDSS concluded that it would be inappropriate to place Hakeem in the care of his maternal grandmother. On July 1, 2002, the JDR court approved the goal of adoption. Mother appealed the decision to the circuit court.

The circuit court heard evidence ore tenus on December 20, 2002, sixteen months after Hakeem's removal into foster care. Williams, the social worker assigned to the case from August 28, 2001 through January 2002, testified that mother did not provide her with confirmation that she completed the necessary mental testing or substance abuse evaluations or the parenting classes. Williams observed mother fall asleep during the monthly

- 3 -

visitation sessions with Hakeem and noted that mother remained homeless or lived in shelters during her monitoring of the case.

Glynis Boyd took over as the social worker assigned to Hakeem's case on January 25, 2002. Boyd reiterated to mother that she needed to complete the requirements of the initial foster care plan. On July 5, 2002, Boyd sent a letter to mother outlining the plan, including the need for a substance abuse assessment and mental health evaluation, attendance at parenting classes, and attainment of appropriate housing and employment. The letter emphasized RDSS's role as a resource to help mother comply with the plan.

Christine Brooks, a licensed professional counselor with the RBHA clinical assessor, conducted the initial substance abuse and mental health assessment of mother. She diagnosed mother with mild mental retardation and recommended sessions with a mental health case manager. Mother admitted to Brooks that she was told her son tested positive for cocaine exposure at birth.

Brooks testified that mother attended four sessions with her mental health counselor but that she missed seven other meetings over a seven-month period. Mother attended three psychiatric appointments and missed four. RBHA closed mother's case for lack of compliance on March 20, 2002. On October 7, 2002, mother called RBHA and scheduled an appointment for November 4, 2002. Mother missed her rescheduled appointment.

- 4 -

Mother called again on December 9 and received instructions to call Brooks' office for an appointment. Mother never called.

Mother testified that she lived in a one-bedroom apartment with the biological father. She moved into the apartment on May 1, 2002. She occasionally worked part-time jobs through a temporary placement agency. Her primary source of income is her social security insurance check. At the time of trial, mother was pregnant with her second child.

The trial court also heard from Wallace Blackburn, Hakeem's foster parent. Blackburn testified that Hakeem will require medical care and hospital visitation for certain developmental problems and to monitor a mass on his brain. Hakeem has regularly scheduled doctor visits every three months and must undergo another MRI when he turns eighteen months. Blackburn stated that Hakeem appears happy and adjusted in his home. The Blackburn family has four other children, including another foster child, age three. He discussed his plans to move his family into a larger house and his desire to adopt Hakeem.

Analysis

Mother argues that the trial court erroneously terminated her residual parental rights pursuant to Code § 16.1-283(C)(2) because RDSS failed to investigate relatives for placement beyond the maternal grandmother and that it failed to make reasonable efforts to help mother comply with the foster care plan. We disagree and conclude that the evidence supports the

trial court's finding that RDSS presented clear and convincing evidence satisfying the requirements of Code § 16.1-283(C)(2).

When considering termination of a parent's residual rights to a child, "the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). As such, the statutory scheme for the termination of residual parental rights under Code § 16.1-283 "provides detailed procedures designed to protect the rights of the parents and their child." Lecky v. Reed, 20 Va. App. 306, 311, 456 S.E.2d 538, 540 (1995).

On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 795 (1990). "The trial court's judgment, when based on evidence heard ore tenus, will not be disturbed on appeal unless plainly wrong or without evidence to support it." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

The pertinent part of Code § 16.1-283(C)(2) provides that

> [t]he residual parental rights of a parent . . . of a child placed in foster care . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that . . . the parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child

- 6 -

was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of . . . rehabilitative agencies to such end.

Mother claims that RDSS did not make reasonable and appropriate efforts to assist her in obtaining the services suggested under the foster care plan. The record discloses that there were ample and appropriate services offered to mother, but she was either unwilling or unable to take advantage of them. "The law does not require the division to force its services upon an unwilling or disinterested parent." Barkey v. Commonwealth, 2 Va. App. 662, 670, 347 S.E.2d 188, 192 (1986). RDSS offered mother, and emphasized the importance of, psychological services and parenting classes. But mother consistently failed to take advantage of the services. She missed more counseling sessions than she attended and did not produce any evidence that she completed a single parenting class in the sixteen months Hakeem remained in foster care. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of [assuming her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Under Code § 16.1-283(C)(2), failure by the parent, without good cause, . . . to make reasonable progress towards the elimination of the

- 7 -

conditions which led to the child's foster
care placement in accordance with [the]
obligations . . . set forth in a foster care
plan . . . shall constitute prima facie
evidence of the conditions

requisite to termination.  Mother failed to show good cause as

to why she did not comply with the plan offered by RDSS.

Mother argues on appeal that her intellectual limitations

required RDSS to do more than simply refer her for services.

However, mother did not offer the trial court any evidence that

intellectual limitations, if any, precluded her from remedying

the conditions which led to Hakeem's placement in foster care.

Therefore, her argument is without merit.

As an alternative, mother argues that RDSS failed to

investigate potential placement with relatives beyond Hakeem's

maternal grandmother.  Code § 16.1-283(A) requires the trial

court to "give consideration to granting custody to relatives of

the child, including grandparents" before terminating parental

rights.  In Logan, we held that the Department "has a duty to

produce sufficient evidence so that the court may properly

determine whether there are relatives willing and suitable to

take custody of the child, and to consider such relatives in

comparison to other placement options."  Logan, 13 Va. App. at

131, 409 S.E.2d at 465.  "Before termination of parental rights

by the court, the agency seeking termination has an affirmative

duty to investigate all reasonable options for placement with

immediate relatives."  Sauer v. Franklin County Dep't of Soc.

Servs., 18 Va. App. 769, 771, 446 S.E.2d 640, 641 (1994). However, this duty does not require the department to "investigate the home of every relative of the child, however remote . . . ." Id. at 771, 446 S.E.2d at 642.

As part of the initial foster care plan, RDSS investigated the maternal grandmother as a placement alternative and determined it would not be appropriate to place Hakeem in her care. Boyd, the RDSS social worker assigned to the case, testified that mother did not identify any other relative as a possible foster parent. At trial, mother stated that at one time her aunt expressed a willingness to take Hakeem. However, mother could only identify the aunt by her first name and could not provide her address or telephone number.

RDSS presented the trial court with sufficient evidence that no reasonable placement alternative exists. RDSS investigated the maternal grandmother and ruled her out as a possible caregiver for Hakeem. Following that determination and mother's failure to comply with the terms of the foster care plan, RDSS changed its goal for Hakeem to adoption. Based upon the evidence before it, the trial court determined that Hakeem's best interests would be served through adoption. We cannot say that the decision of the trial court is plainly wrong or without support in the record.

The evidence presented by RDSS supports the finding that termination of mother's residual parental rights served the

child's best interests.  Mother's inability to remedy the conditions that led to Hakeem's placement in foster care was without good cause.  Accordingly, we summarily affirm the decision of the trial court.  <u>See</u> Rule 5A:27.

<u>Affirmed</u>.